ARCHIBALD A. BRAUER ET AL. *v.* FRANK J. FRECCIA ET AL.

ALCORN, HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued March 3—decided April 7, 1970

*John F. Lambert,* for the appellants (plaintiffs).

*Howard C. Kaplan,* for the appellees (defendants).

SHAPIRO, J.  The plaintiffs sought to have conveyed to them certain realty in Greenwich pursuant to an option contained in a lease between them and the defendant Frank J. Freccia.  The plaintiffs attempted to exercise this option, but the owners refused to convey.  The plaintiffs then instituted suit in the Superior Court seeking an order directing the defendants to convey the property.  The trial court concluded that they were not entitled to the relief sought and rendered judgment for the defendants.  The plaintiffs have appealed to this court.

The plaintiffs claim that certain admitted or undisputed facts should have been included in the finding.  To secure an addition on this ground, it is necessary for an appellant to point to some part of the appendix, the pleadings, or an exhibit properly before us which discloses that the appellee admitted that the fact in question was true or that its truth was conceded to be undisputed.  *State* v. *Dukes,* 157 Conn. 498, 500, 255 A.2d 614; Maltbie, Conn. App. Proc. § 158.  That a fact was testified to and was not directly contradicted by another witness is wholly insufficient.  Practice Book § 628 (a); *Martin* v. *Kavanewsky,* 157 Conn. 514, 515, 255 A.2d 619; Maltbie, Conn. App. Proc. § 158.  The plaintiffs here pointed merely to testimony as supporting their request for additions, and most of this testimony was

contradicted. The plaintiffs are not entitled to any additions to the finding. Nor is there any merit to the plaintiffs' claim that certain material facts were found without evidence to support them.

The finding discloses the following facts. As a result of negotiations, the plaintiffs and the defendant-owner Frank J. Freccia entered into a lease dated August 28, 1962, concerning real estate in Greenwich.[1] Subsequent to its execution Frank

---

[1] The provisions of the lease included a "term of five (5) years from the first day of September 1962 to the 31st day of August 1967 for the total rent of Twenty One Thousand (21,000) Dollars payable in monthly payments of Three Hundred Fifty ($350) Dollars each on the first day of October 1962 and on the first day of each month thereafter until the total rent has been paid in full, that the sum of $700.00 is paid upon the signing of this lease, $350.00 of said sum shall be applied to the payment of the rent due upon September 1, 1962, the balance shall be held as security . . . to answer for any damages sustained by reason of the Lessees' use and occupancy . . . ."

The lease contained an option to purchase clause as follows: "IT IS FURTHER MUTUALLY AGREED THAT if the Lessees shall have duly and punctually fulfilled all of the provisions, agreements, covenants and conditions of this lease, including the provisions of this paragraph hereinafter set forth, the Lessor, on the receipt of written notice from the Lessees stating that the Lessees elect to purchase the leased premises pursuant to the provisions of this paragraph, will convey the leased premises to the lessees on and subject to the following conditions: a) The purchase price of the leased premises shall be fifty-eight thousand five hundred ($58,500.00) dollars . . . . b) On account of said purchase price the Lessor agrees to credit fifty (50%) per cent of the rent paid to the date of the delivery of the deed, toward the said purchase price. c) In the event that the Lessees shall fail for any reason to exercise its privilege to purchase the leased premises in the manner hereinbefore provided for all payments made by the Lessees to the Lessor pursuant to the provisions of subsection (b) of this paragraph, to be credited to said purchase price shall be forfeited to the Lessor and the Lessees shall have no right to receive back such payments or any part thereof. . . . e) It is agreed that this option to purchase may be exercised only by the Lessees giving the written notice to the Lessor above provided for at least sixty (60) days prior to the expiration of this lease or any renewal thereof."

J. Freccia conveyed an interest in the property to Emily Freccia and Eugene Freccia. The plaintiffs paid $700 upon the signing of the lease in accordance with its terms. They paid all rents for the years 1962 and 1963; all rents for 1964, except for October; and all rents for 1965, except for November. In 1966 they paid rents for January, April, June, July, September, November and December. In 1967 they paid rents for January, February, March, April, May and July. As of April 1, 1967, they had failed to make seven monthly payments of $350 each, causing an arrearage of $2450. As of the date of the trial they had failed to make a further monthly payment of $350 thereby causing a total arrearage of $2800.

On April 18, 1967, the plaintiffs sent a written notice to the defendants stating that they wished to purchase the property under the terms of the option. The plaintiffs' attorney sent a letter dated August 10, 1967, referring to the plaintiffs' prior letter of April 18, 1967, and demanding a conveyance, to which the defendants never replied. The plaintiffs attempted to pay, by checks, the rent for the months of August and September, 1967, but the checks were refused and were returned by the defendants' attorney on September 8, 1967. In September, 1967, the defendants caused a notice to quit to be served on the plaintiffs, claiming nonpayment of rent. After this notice was served, the plaintiffs attempted to pay the rent for the months of October, November, and December, 1967, but these tenders were refused.

The court concluded that the payment of all rent due under the lease was a condition precedent to the plaintiffs' right to exercise the option to purchase; that the conduct of the defendants did not constitute a waiver of their rights and did not estop them from

relying on the provision of the option which required prompt payment of the rent; that the failure to pay the rent for eight months, totaling $2800, was due to gross negligence; that the failure to pay rent when due was not the result of accident, mistake or illness; and that the plaintiffs were not entitled to equitable relief.

The plaintiffs assign error in the conclusions reached by the trial court. They are tested by the finding. *Brockett* v. *Jensen,* 154 Conn. 328, 331, 225 A.2d 190; *Klahr* v. *Kostopoulos,* 138 Conn. 653, 655, 88 A.2d 332. The conclusions reached by the court must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law material to the case. *Johnston Jewels, Ltd.* v. *Leonard,* 156 Conn. 75, 79, 239 A.2d 500; *Craig* v. *Dunleavy,* 154 Conn. 100, 105, 221 A.2d 855.

"A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance." *Lach* v. *Cahill,* 138 Conn. 418, 421, 85 A.2d 481. Whether the performance of a certain act by a party to a contract is a condition precedent to the duty of the other party to act depends on the intent of the parties as expressed in the contract and read in the light of the circumstances surrounding the execution of the instrument. *Strimiska* v. *Yates,* 158 Conn. 179, 185, 257 A.2d 814; *McIsaac* v. *Hale,* 104 Conn. 374, 379, 132 A. 916; 5A Corbin, Contracts § 1175, p. 294; see also note, 115 A.L.R. 376, 377. Here the language is lucid and unambiguous in stating that the defendant Frank J. Freccia was obligated under the option clause "if the Lessees shall have duly and punctually fulfilled all the provisions, agreements, covenants and conditions of this lease." This language clearly

indicates that the defendants' duty to comply with the terms of the option was conditioned upon the plaintiffs' punctual performance of their obligations under the lease. A tenant who fails to meet the named conditions of his lease defeats his right to rely on it when he makes an effort to purchase the property pursuant to the option in the lease. *Lake Shore Country Club* v. *Brand,* 339 Ill. 504, 522, 171 N.E. 494. The court was correct in concluding that, since the plaintiffs had failed to perform their obligations under the lease, the right to enforce the option to purchase was not in existence and the defendants were under no obligation to convey the property.

The plaintiffs argue that, despite their failure to make certain monthly rental payments, they can nevertheless enforce the option because the defendants took no steps to terminate the lease. They correctly claim that failure to pay rent does not automatically terminate a lease but that some definite, unequivocal action to accomplish that end must be taken by the lessor. *Chapel-High Corporation* v. *Cavallaro,* 141 Conn. 407, 411, 106 A.2d 720; *Thompson* v. *Coe,* 96 Conn. 644, 651, 115 A. 219. Thus, to end the plaintiffs' right to possession of the property the defendants would have been required to take some affirmative action to terminate the lease. The defendants, however, were under no duty to do so and their failure to so act in no way relinquished any of their rights under the option agreement. *Lake Shore Country Club* v. *Brand,* supra, 525.

The plaintiffs claim that the defendants waived their rights under the option by conduct in addition to their failure to terminate the lease. The defendants were aware that certain rent payments had not been made. At a meeting in the office of the defend-

ant Frank J. Freccia in April, 1967, at which the plaintiff Archibald A. Brauer indicated his intention to exercise the option, Freccia told Brauer that the property could not be conveyed because of involvement with the government in another case. Freccia did not state that the option had in any way terminated. In July, 1967, the plaintiffs' attorney was informed by the defendants' attorney that the defendants were unable to convey the property because of a restraining order. The plaintiffs argue that, because of this conduct, the defendants waived their right to refuse to an exercise of the option by reason of the plaintiffs' failure to pay certain instalments of rent. The mere fact that the defendants gave one reason why the property could not be sold does not mean that they could not assert another reason at a later time. 3A Corbin, Contracts § 762, p. 524. The conclusion that there was no waiver is one of fact for the trier. See *Kurzatkowski* v. *Kurzatkowski,* 142 Conn. 680, 684, 116 A.2d 906. As the trial court properly concluded, this evidence does not constitute a waiver, which is defined as an "intentional relinquishment of a known right." *Jenkins* v. *Indemnity Ins. Co.,* 152 Conn. 249, 257, 205 A.2d 780. We see nothing in the facts which would warrant a conclusion that the defendants had intentionally waived the express condition precedent to their liability under the option agreement.

Nor is there any merit to the claim that the defendants are estopped from interposing the failure to pay rent as a defense to their liability under the option. Even if we assume that the defendants' conduct could reasonably have induced the plaintiffs to believe that the option might be exercised despite the failure to pay rent, there is no indication of any reliance on such a belief by the plaintiffs which was

detrimental or prejudicial to them. See *Spear-Newman, Inc.* v. *Modern Floors Corporation,* 149 Conn. 88, 91, 175 A.2d 565.

Finally, the claim is made that the court erred in not granting equitable relief in order to avoid a forfeiture because, if the option had been exercised, one-half of the rental payments would have been applied toward the purchase price of the property. But even if we assume that the doctrine of forfeiture applies to the present situation, it is never applicable where the party seeking relief is, as the court here found, guilty of "voluntary, inexcusable and gross negligence in failing to pay rent when due." *F. B. Fountain Co.* v. *Stein,* 97 Conn. 619, 626, 118 A. 47; see *Galvin* v. *Simons,* 128 Conn. 616, 620, 25 A.2d 64. Certainly the court was not in error in denying equitable relief to the plaintiffs, who were behind a total of seven monthly rental payments totaling $2450 as of April 1, 1967, and an eighth payment on the date of trial, and who even then made no attempt to pay the arrearage.

There is no error.

In this opinion the other judges concurred.