# New Haven Water Company *v.* Public Utilities Commission

Court of Common Pleas   New Haven County   File No. 88265

Memorandum filed July 31, 1972

*Tyler, Cooper, Grant, Bowerman & Keefe,* of New Haven, for the plaintiff.

*Robert K. Killian,* attorney general, and *Richard L. Barger* and *Frederick D. Neusner,* assistant attorneys general, for the defendant.

Aaronson, J. This is an appeal by the New Haven Water Company from the finding and order of the public utilities commission dated November 24, 1971.

The original application of the New Haven Water Company sought an overall increase in rates of 23 percent, which would produce additional annual operating revenue of $2,694,982. The commission denied the full increase but did allow approximately one-third of the request, authorizing additional revenue of $848,269. Rates and charges were filed by the company on June 14, 1971, to become effective

July 1, 1971. Public hearings were held on the proposals on July 26, 1971, September 7, 1971, and September 8, 1971. Found to be appropriate to the facts of the application was the company's suggested "test year," beginning May 1, 1970, and ending April 30, 1971.

There are five relevant statutory provisions which recite the duty of the commission, the obligation and rights of the petitioner, and the function of the court.

Section 16-19 of the General Statutes reads in part: "If the commission finds any rate to be . . . more or less than just, reasonable and adequate to enable such [public service] company to provide properly for the public convenience, necessity and welfare, . . . it may determine . . . just and reasonable maximum rates and charges to be made by such company."

Section 16-22 states: "At any hearing involving a rate, the burden of proving that a rate under consideration is just and reasonable shall be on the public service company."

Section 16-37 declares in part: "The court, upon . . . appeal, shall review, upon the record so certified, the proceedings of the commission and examine the question of the legality of the order, authorization or decision appealed from and the propriety and expediency of such order, authorization or decision so far as said court has cognizance of such subject and shall proceed thereon in the same manner as upon complaints for equitable relief."

Section 16-35 says in part: "Any company . . . aggrieved by any order, authorization or decision of the commission . . . may appeal therefrom . . . within thirty days after the filing of such order . . . ."

Section 16-39 directs: "Each such appeal shall be a supersedeas of the order, authorization or decision appealed from, provided the court . . . may, at any time, order that such appeal shall not so operate . . . ."

The testimony before the commission made it clear that there is no definitive method for determining reasonable utility rates. The legislature gives no guidelines, and the cases on this question refer to no absolutes. Countless factors involving assumptions and estimates and personal judgments of experts are all part of the ultimate decision. The best the commission can do is rule out speculation, conjecture and surmise and arrive at a rate based on an honest consideration of all legal and pertinent facts. The rate, whatever the methodology or theory used to determine it, must be fair and equitable to the utility, to the investors in the utility, and, of course, to the user, consumer and public whom the utility primarily exists to serve. And in regard to this issue there are primary legal rules which are sensible, logical and practical and which guide the court.

"No satisfactory definition of reasonable, as applied to rates, applicable to each case, can be made. Each must be decided upon its own facts and upon a consideration of many varying elements." *Turner* v. *Connecticut Co.,* 91 Conn. 692, 698; *New Haven* v. *New Haven Water Co.,* 118 Conn. 389, 402.

The commission is not bound to accept the testimony of the company's experts. It is entitled to weigh the evidence and determine its credibility. *Conley* v. *Board of Education,* 143 Conn. 488, 492. Although the weight and credibility of the evidence offered are matters within the province of the commission, a conclusion of the commission not legally supported by the evidence would constitute an abuse

of its powers. *Connecticut Television, Inc.* v. *Public Utilities Commission,* 159 Conn. 317, 329; *Brook Ledge, Inc.* v. *Public Utilities Commission,* 145 Conn. 617, 619. However, "[t]he court cannot substitute its discretion for that legally vested in the commission but determines on the record whether there is a logical and rational basis for the decision of the commission or whether, in the light of the evidence, it has acted illegally or in abuse of its discretion." *Anthony Augliera, Inc.* v. *Loughlin,* 149 Conn. 478, 481; *Kram* v. *Public Utilities Commission,* 126 Conn. 543, 550.

It is axiomatic that every public utility is entitled to a fair return upon the fair value of the property used in providing its services. *Cedar Island Improvement Assn.* v. *Clinton Electric Light & Power Co.,* 142 Conn. 359, 370; *New Haven* v. *New Haven Water Co.,* 118 Conn. 389, 401. But the rates must not be so low as to be confiscatory or so high as to exceed the value of the service to the consumer. And, as stated, the commission in determining this is not bound by any single formula or rule. Under the statutory rule of "just and reasonable," it is the result reached, not the method employed, which is controlling. "The fact that the method employed to reach that result may contain infirmities is not then important." *Federal Power Commission* v. *Hope Natural Gas Co.,* 320 U.S. 591, 602.

A study of the 482 pages of transcript, charts, exhibits, schedules, scholarly interpretations and analysis of facts and figures makes it clear how wise it was to remove from the province of the court rate-making power. The court's function necessarily had to be limited to determining the reasonableness of the rate, with the power and authority to return the entire order of the commission back to it for a reconsideration of all the issues involved if the court

decided that the commission had in the first instance acted illegally, arbitrarily or in abuse of its discretion. *New Haven* v. *New Haven Water Co.*, 118 Conn. 389, 403; *Turner* v. *Connecticut Co.*, 91 Conn. 692.

By way of special defense, the commission asserts that the company has waived its rights and is estopped from taking this appeal because it sought and accepted the commission's approval of its rates and because it placed those rates in effect prior to commencing its appeal. The record demonstrates that the finding and order of the commission was dated at Hartford, Connecticut, November 24, 1971. Pursuant to this finding and order, the company voluntarily filed with the commission on November 26, 1971, a revised schedule of rates designed to produce the additional revenues granted. Because the applicant substantially complied with the order of the commission, the revised schedule of rates was approved on December 2, 1971, and went into effect December 7, 1971.

This issue is not a new one to the New Haven Water Company or to other public utilities and administrative agencies. The problem has been discussed and decided in condemnation matters and in workmen's compensation cases, among others.

Essentially, the argument of the company (no other conclusion can be reached from a perusal of its reply brief dated July 14, 1972) is not against the legal principle and concept of waiver and estoppel in a case of this kind but rather that the facts do not warrant their application. Its contention is based on the chronology of events in the matter before the court. The facts are as follows: The writ, summons and complaint are dated December 1, 1971, but legal service was not made until December 9, 1971. On December 7, 1971, a judge of the Court of

Common Pleas signed the plaintiff's petition for an order to show cause directing the defendant to appear in court on December 16, 1971, and on that day the judge ordered that the company's appeal "shall not act as a supersedeas from so much of the decision and order . . . as permits the appellant to put into effect a new schedule of rates producing additional revenues in the amount of $848,269, said increase to be effective as ordered by said Commission as of December 7, 1971."

The court regards the position of the company as untenable. The steps taken by it did not and could not cure the legal defects in the procedures pursued by the company. Legal options available to the company were a request for a reargument before the commission, an appeal from the order, or an acceptance of it. It is clear that the company chose to accept the order by filing a revised schedule of rates which substantially complied with the order and which the commission accepted. Whatever else the company tried to do to cure its fatal course of conduct could not help its position. The company's brief does not buttress its claim. It is no answer to the position of the defendant to say that the company did not intend to waive or relinquish a known right, when its own acts, voluntarily put into motion, are diametrically opposed to their claimed intention.

The rule of law relevant to the issue is logical and persuasive and is the majority opinion throughout the country, and the facts in this case fit into the rule. "[A] party cannot accept the benefits of a judgment, order or decree and afterwards prosecute an appeal . . . . This general rule applies only where a substantial benefit has been accepted and where the acceptance has been voluntary, and intentional. . . . 'If one who accepts the benefits of a

judgment or decree does so under compulsion rather than voluntarily, he incurs no waiver.'" *Cherokee Nation* v. *United States,* 355 F.2d 945, 949.

Two cases cited by the commission treat the effect of accepting awards in condemnation matters, as mentioned above, but support its contention on the issue of waiver and estoppel. *State* v. *Kraszyk,* 240 Ind. 524; *Beer* v. *Ozaukee County Highway Committee,* 9 Wis. 2d 346.

"It is a well settled general rule, which in some states exists by statute or rule of court, that, where a party, knowing the facts, voluntarily accepts the benefits, or a substantial part thereof, accruing to him under a judgment, order, or decree, such acceptance operates as a waiver or release of errors, and estops him from afterward maintaining an appeal or writ of error to review the judgment, order, or decree or deny the authority which granted it, when the effect of the appeal may be to annul the judgment as a whole, unless the right to appeal under such circumstance is given by statute. . . . If the provisions of a judgment, order or decree, are mutually interdependent, so that the acceptance of benefits therefrom is inconsistent with the alleged invalidity in other portions, a party cannot avail himself of that portion which is favorable to him, and accept its benefits, and afterward prosecute an appeal to reverse in the appellate court such portions as are unfavorable to him; and this rule is not affected by the fact that appellant executes a supersedeas bond to satisfy the part of the judgment against him, if affirmed, or by the fact that the benefits accepted are small as compared with those at stake under the remainder of the judgment." 4 C.J.S. 644, Appeal and Error, § 215; *Board of Trustees* v. *Public Service Commission,* 261 N.E.2d 373, 374 (Ind. App.); *Department of Labor & Industries* v. *Stone,* 190 Wash. 145.

These citations also state that a party cannot appeal from an order after he has obtained the benefit of a subsequent order made at his request and based on the order from which he attempts to appeal. This is exactly the situation in the case under consideration. "It is quite generally conceded that one cannot ordinarily accept or secure a benefit under a judgment or decree and then appeal from it . . . when the effect of his appeal . . . may be to annul the judgment." 2 R.C.L. 61, Appeal and Error § 44.

Were the court to find that the commission acted illegally, arbitrarily or in abuse of its discretion, the court would sustain the appeal and remand the entire record back to the commission for total reconsideration of its order, including, necessarily, the partial rate increase allowed. The rate problem cannot be examined piecemeal. All of the innumerable factors that go into a valid determination of rates must be considered together. Because the provisions of the order are mutually interdependent, the company may not, as it has tried to do, accept the favorable portions of it, accept its benefits, and then appeal to reverse the portions which are unfavorable—in the case before the court there are twelve such portions.

The record makes it patently clear that the company waived its rights by intentionally relinquishing them. It would be fatuous to conclude that the company did not know of its rights or did not understand them. This case is a classic example of waiver as defined in Connecticut's own case law. "Waiver is the voluntary relinquishment of a known right. It involves the idea of assent, and assent is an act of understanding. This presupposes that the person to be affected has knowledge of his rights, but does not wish to assert them. Intention to relinquish

must appear, but acts and conduct inconsistent with intention to terminate the contract are sufficient. The rule is applicable that no one shall be permitted to deny that he intended the natural consequences of his acts and conduct." *MacKay* v. *Aetna Life Ins. Co.,* 118 Conn. 538, 547; *Jenkins* v. *Indemnity Ins. Co.,* 152 Conn. 249, 258; *Brauer* v. *Freccia,* 159 Conn. 289, 295.

The court finds that the plaintiff waived its right to appeal.

The appeal is dismissed.