Bruce K. JOHNSON and Marilyn Johnson, his wife, Respondents-Appellants,

v.

Russel E. FARROW and Joyce M. Farrow, his wife, Appellants-Respondents.

Nos. 40333, 40349.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 5, 1980.

Spradling, Drusch, Dillars & Spradling, A. M. Spradling, III, Cape Girardeau, for appellants-respondents.

Oliver, Oliver & Jones, John L. Oliver, Jr., Cape Girardeau, for respondents-appellants.

SMITH, Presiding Judge.

Defendants appeal from a judgment of $3500 against them in plaintiffs' suit to recover damages for breach of an option contract by defendants. The case was tried to the Court. Plaintiffs also appealed from the judgment on the basis that the damages awarded were inadequate. Plaintiffs did not brief the matters raised on their appeal and that appeal is deemed abandoned.

We review the evidence in the light most favorable to the judgment. In May 1974, Melvin and Carolyn Carver purchased lot 13 in McKendree Hills Subdivision in Cape Girardeau County by virtue of a real estate installment contract with defendants, the sub-dividers of the development. That contract provided purchasers with an option for five years to purchase for $1,000 each two other adjacent lots in the subdivision. This option was given "in consideration of the promises stated herein" and was subject to a clause "provided Purchasers are not in default of any term contained in this agreement." The real estate installment contract also provided for full prepayment privilege without penalty and that purchasers promptly pay taxes when due. There were provisions concerning default. These provisions required that if default occurred and continued for 90 days sellers would notify purchasers of the default and if the default was not corrected within 10 days the sellers "may immediately declare this contract void and terminated" and take immediate possession of the premises retaining all payments as rent and liquidated damages. It was also provided that if no default occurred then sellers would, upon receipt of all money due under the contract, convey the property by warranty deed to the purchasers. The contract provided that "time shall be deemed of the VERY ESSENCE of this contract" and that all provisions "shall apply to and bind the . . . assigns of the parties hereto." Purchasers were allowed to retain possession "for so long as no default is made by the purchasers in any of the terms hereof." Sellers also promised to pave the street in front of the property and "provide a paved sidewalk from driveway to the house" within a year.

In March 1975, defendants notified the Carvers that they were in default in their payments. The Carvers immediately made a payment which was accepted by defendants. The payment was for only one month and from then on the Carvers remained two months behind in their payments. Defend-

ants made no further notification of default, did not attempt to regain possession, continued to accept payments from the Carvers, and gave no notification of forfeit of the option.

In September 1975, the Carvers entered into a contract with the plaintiffs for sale of the real estate. This contract provided for assumption of the option contained in the sellers' real estate installment contract and for enforcement of the then unfulfilled sidewalk paving provision. In December 1975, the contract between the Carvers and plaintiffs was closed. Plaintiffs paid the balance due on the real estate installment contract which was then paid to defendants and plaintiffs received from defendants a general warranty deed. From the proceeds of the sale payment of the 1974 real estate taxes, then in default, was made. Plaintiffs also received from the Carvers an assignment of the real estate installment contract. Subsequently defendants completed the sidewalk paving and received $400 which had been held in escrow at the closing to secure this performance.

On several occasions in 1976 and early 1977, defendants orally acknowledged that plaintiffs had an option to buy lots 11 and 12. In March 1977, defendants conveyed lot 12 to their daughter and her fiance as a wedding gift.[1] Shortly thereafter plaintiffs attempted to exercise their option, were refused and this suit followed.

■ The first point we deal with is defendants' contention that the trial court erred in granting judgment against Joyce Farrow as "there was no substantial evidence to find Joyce M. Farrow knew of the existence of any assignment or that she in any way prevented the exercise of said option . . . ." Mrs. Farrow signed the real estate installment contract which was acknowledged and which was assignable. She signed the general warranty deed to the plaintiffs, and the deed to her daughter and her fiance. She was a party to the option contract and to the deed which made

performance of the option contract impossible, at least as to Lot 12. She, with her husband, still owns Lot 11 and plaintiffs' offer to exercise the option was addressed to her and her husband and delivered to their attorney. She is a party to the contract sued upon and as a party is liable for the breach of its obligations. There is no merit to this point.

■ Defendants' second point is that there was no consideration for the option contract. In support of this contention defendants cite cases involving separate option contracts. See for instance *Mohawk Real Estate Sales, Inc. v. Crecelius,* 424 S.W.2d 86 (Mo.App.1968). Here the option was a part of the entire real estate installment contract. The considerations flowing between the parties were part of the entire contract. These mutual considerations served to support the entire contract between the parties including the option provision. *Echols v. Bloom,* 485 S.W.2d 798[2, 3] (Tex.Civ.App.1972); 1 Corbin on Contracts Sec. 125. This is particularly apparent from the language of the paragraph granting the option which states it is "in consideration of the promises stated herein." There was no lack of consideration.

■ Defendants' final point is that the trial court erred in holding that an option existed when it was assigned to plaintiffs because prior to that time the Carvers were in default, rendering the option void. The condition precedent to the exercise of the option was that the optionees not be in default. We do not, however, read the real estate installment contract as providing that the option terminated if at any time during the existence of that contract a default occurred. Rather we interpret it as meaning that the option was exercisable unless at the time of the attempted exercise the purchasers or their assigns were in default. If the condition precedent was not met at that time no right to exercise the option would exist. *Lake Shore Country*

---

1. This couple were joined as defendants but dismissed by the court at the time of judgment because no cause of action had been established as to them. No appeal was taken from this ruling.

Club v. Brand, 339 Ill. 504, 171 N.E. 494 (1930); Brauer v. Freccia, 159 Conn. 289, 268 A.2d 645 (1970). That was not the situation here. Any default that existed was cured upon the closing of the December sale contract between the Carvers and plaintiffs and the receipt by defendants of all obligations due under the contract. Thereafter, the option was available for exercise until its termination as provided by the time limitations of the contract. This interpretation is consistent with the interpretation placed upon the contract by defendants who acknowledged its continued viability for more than a year after they had received full payment under the installment contract.

■■■ The law is also clear that continued acceptance of payments under a contract constitutes a waiver of prior default. Price v. Rausche, 186 S.W. 968 (Mo.1916); Fritts v. Cloud Oak Flooring Company, 478 S.W.2d 8 (Mo.App.1972) [2, 3]. This is true even if the contract provides that time is of the essence, (or even the "VERY ESSENCE"). Branch v. Lee, 159 S.W.2d 677 (Mo.1941) [1–4]. While that principle of law would not require allowing the exercise of the option so long as the default continued, Lake Shore Country Club v. Brand, supra ; Brauer v. Freccia, supra, it does mean that when the default has been corrected the condition precedent has been met and the option is effective. Whatever default occurred by the conduct of the Carvers was waived by defendants by their acceptance of payments after the default and throughout the continuation of that default and by their acceptance of full payment of the obligations under the installment contract in December 1975. At no time did defendants seek to invoke the default penalty provisions and they honored the conveyance provision which could be invoked only if the Carvers had met their obligations under the contract. Defendants' conduct throughout the existence of the installment contract establishes their waiver of the default provision of the contract. Because the contract does not provide that default immediately terminates the option, the performance of all obligations of the contract after defendants' waiver of their right to exercise the default provisions made the option subject to exercise by the plaintiffs.

It is further questionable that defendants may assert that Carvers were in default and thereby void the option when they themselves were also in default under the sidewalk paving provision which default lasted after that of the Carvers had been cured.

Judgment affirmed.

ALDEN A. STOCKARD, Special Judge and SATZ, J., concur.