[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a summary process action for nonpayment. The parties CT Page 6571 stipulated at trial held on March 19, 1999, that the allegations of the plaintiff's complaint are admitted. The trial proceeded on the defendant's special defense requesting equitable relief against forfeiture of her lease.[1]
In deciding whether to grant the defendant's request for equitable relief I have considered and relied on the following facts: In April 1990, the plaintiff and the defendant entered into a written lease on an automatically renewable month-to-month basis for subsidized housing in a project known as Veteran's Terrace and Veteran's Terrace Extension. The plaintiff's project is a Section 8 Substantial Rehabilitation Project funded by a lump sum subsidy pursuant to a single "Housing Assistance Payment Contract" executed in 1979 with the then Connecticut Department of Housing. The defendant has lived there with her three children, now aged 17, 13 and 9, for nine years. Should the defendant be evicted, the Section 8 subsidy she enjoys remains with the unit for another needy tenant and does not transport with her.
The defendant's portion of rent for her three bedroom apartment is $100.00 monthly which includes heat and hot water. Monthly rent for a similar unsubsidized apartment would be $600 to $700. Rent is calculated by a formula, as established under applicable federal and state laws and regulations, which considers her income and is subject to redetermination.[2]
Under the terms of the lease, rent is due on or before the tenth day of each month. If it is not paid on time, a $10.00 late charge is imposed and collected as part of the rent.
The defendant did not pay the rent due in October 1998. On October 15, 1998, she was served with Notice to Quit the premises on or before October 29, 1998. Around November 22, after she had been served in this action but prior to the return date, the defendant tendered the rent and late fees for October and November. The plaintiff refused the tender of late payment of rent because the action had been commenced and the tender was not made on or before the 15th of November, in accordance with its policy.[3] The defendant has saved the money she tendered to the plaintiff in November and continues to set aside amounts which now total $961.00 to cover her rental arrearage, costs and fees.
Since September 1997 the defendant has been employed by a child care learning center. She works approximately 20 hours per week, sometimes less, at the rate of $5.65 per hour. She also CT Page 6572 received, state assistance through September 1998 in the amount of $679 monthly. She received child support, off and on, of about $100-150 per month.[4] In August, she was hospitalized for a few days and was unable to work at the learning center. She resumed her part-time work in September while she was still receiving state assistance payments.
In October she did not receive state assistance; she did receive child support. When she inquired, she was told her benefits from the Temporary Assistance to Needy Families (TANF) program had been terminated because she had reached the 21 month limit for assistance. She requested reinstatement. She could not pay October rent because she did not receive a TANF payment in October. She tendered the late payment of rent in November when she received a state assistance check in the amount of $588.
On July 27, 1998, the defendant filled out a Re-Exam Affidavit. The employment information section requested that she "[l]ist all full and/or part-time employment for all members of the household. . . . and complete name and address of employer." The information sought included hourly rate, hours worked, tips and annual income. No information was entered.
In the section entitled "Other Income", the defendant noted AFDC as the source and $639 as the amount. She signed the application. She also signed the following statement attached to the application: "I Evelyn Ramos receive $639.00 dollars from the State income, she signed a U.S. Department of Housing and Urban Development brochure entitled "Things you should Know" about the process, the information required and the penalties for giving "false, incomplete, or inaccurate information on the application and recertification forms." She signed the Applicant/Tenants Certification which states in pertinent part: "I know I am required to report immediately in writing any changes in income and any changes in household size. . . . " Finally, she signed a document of the East Hartford Housing Authority entitled "Interim Reporting Requirements" which states "I . . . understand that I mustreport in writing any of the following changes (within 10 days)if they occur between regularly scheduled recertifications: Anychange in income whether increase or decrease. The defendant was aware that her income affects her rent.
Plaintiff's leasing and occupancy manager testified, and I find, there is no record of defendant's ever informing the plaintiff of a change in her income and employment status.[5]
CT Page 6573 Had she done so, based on her part-time employment, her share of the monthly rental payment would have been recalculated and increased by approximately $47.[6]
The defendant claims that even though the plaintiff has proven its summary process case, this court, as a court of equity, should intervene to enjoin a forfeiture of her possession of the premises.
Equitable defenses and counterclaims implicating the right to possession are available in summary process actions. Fellows v.Martin, 217 Conn. 57 (1991). Equitable principles barring forfeitures may apply to summary process actions for nonpayment of rent if: (1) the tenant's breach was not willful or grossly negligent; (2) upon eviction the tenant will suffer a loss wholly disproportionate to the injury to the landlord; and (3) the landlord's injury is reparable. Id., 66-67. Cumberland Farms,Inc. v. Dairy Mart, Inc. 225 Conn. 771, 778 (1993).
Whether equity would relieve a tenant's failure to pay rent when the non-payment is largely but not entirely beyond the defendant's control was answered affirmatively by Judge Holzberg in East Hartford Housing Authority v. Parker, No. SPH 9111-63027 (August 7, 1992) (J.D. Hartford/New Britain at Hartford) (Holzberg, J.). The analytic framework of Parker consisted of the following four elements: 1) In the absence of equitable relief, the defendant will suffer a loss wholly disproportionate to the landlord. 2) The injury to the plaintiff is reparable. 3) The reason for the non payment and the defendant's responsibility. 4) The extent to which the tenant has demonstrated good faith in curing the default.
As the Parker court noted, the third factor is not always analytically distinct from the others. This factor is often expressed as the "clean hands doctrine" and evaluates whether the tenant's breach was willful or grossly negligent or the product of mere neglect. The fourth factor, the good faith of the tenant in complying with the lease, is also to be evaluated in deciding whether the "clean hands doctrine" bars equitable relief.
 Willful or gross negligence in falling to fulfill a condition precedent of a lease bars the application of the doctrine of equitable nonforfeiture. Fellows v. Martin, supra, 67; Nicoli v. Frouge Corporation, 171 Conn. 245, 247, 368 A.2d 74 (1976); Elliott v. South CT Page 6574 Isle Food Corporation, 6 Conn. App. 373, 377, 506 A.2d 147 (1986). In circumstances involving the nonpayment of rent, we have construed strictly this threshold requirement in deciding whether to grant equitable relief. Brauer v. Freccia, 159 Conn. 289, 293-94, 268 A.2d 645 (1970); see also Mobilia, Inc. v. Santos, 4 Conn. App. 128, 492 A.2d 544 (1985). We have also stated more recently, however, that "[t]he doctrine against forfeitures applies to a failure to pay rent in full when that failure is accompanied by a good faith intent to comply with the lease or a good faith dispute over the meaning of a lease." Fellows v. Martin, supra, 69; see also Petterson v. Weinstock, 106 Conn. 436, 138 A. 433 (1927). (Emphasis supplied.)
Cumberland Farms, Inc. v. Dairy Mart, Inc., 225 Conn. 771, 778
(1993).
"A court of equity will apply the doctrine of `clean hands' to a party seeking equitable relief from forfeiture." Fellows v.Martin, supra. One who seeks to prove that he is entitled to the benefit of equity must first come before the court with clean hands. Cohen v. Cohen, 182 Conn. 193, 201 (1980). The doctrine of unclean hands expresses the principle that a party who seeks equitable relief must show that his conduct has been fair, equitable and honest as to the particular controversy that is the subject matter of the action. Collens v. New Canaan Water Co.,155 Conn. 477, 492 (1967).
The trial court enjoys broad discretion in determining whether the promotion of public policy and the preservation of the courts' integrity dictate that the clean hands doctrine be invoked. Polverari v. Peatt, 29 Conn. App. 191 (1992). The maxim is not one of absolutes and should be applied in the court's sound discretion. A B Auto Salvage, Inc. v. Zoning Bd ofAppeals, 189 Conn. 573 (1983). The party who seeks to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in willful misconduct with regard to the matter in litigation. DeCecco v. Beach, 174 Conn. 29, 35 (1977).[7]
Under the circumstances of this case, invocation of the "clean hands" doctrine is appropriate and its application bars defendant's request for equitable relief from forfeiture.
In exercising the discretion to invoke the "clean hands" CT Page 6575 doctrine, I have considered that the nonpayment of rent in October, which is the basis of this summary process action, may well have been the result of excusable neglect. The defendant failed to anticipate that her state assistance limit had been reached and to reinstate the assistance. She lost income in August because of illness. I have also considered her attempt to remedy the mistake by tendering payment, and her offer to pay not only the money she has set aside to pay the arrearage as it is presently calculated, but, as it might be recalculated, under a payment plan. Those considerations mitigate in her favor. Equity, even in the absence of fraud, accident or mistake, may grant relief to prevent a forfeiture resulting from the breach of a covenant to pay rent upon payment or tender of all arrears of rent with interest. Zitomer v. Palmer, 38 Conn. Sup. 341, 345
(App. Sess. 1982).
I have been mindful, as well, of the consequence of loss of this subsidized housing for the defendant and her three children. The lease renews itself each month such that it is in effect a perpetual lease. Eviction involves more than the forfeiture of a conventional month to month tenancy; it involves the loss of a tenancy whose duration is indefinite, even lifelong, as long as the defendant remains otherwise eligible. Moreover, because the apartment is project-based subsidized, the § 8 subsidy stays with the apartment and is not personal to the defendant.
In reaching this decision, in the exercise of my discretion, to invoke the "clean hands" doctrine to bar equitable relief, the nature of the tenancy and subsidy has weighed most heavily in favor of the defendant. Ironically, it is that consideration which tips the scales against her. The defendant has enjoyed the benefits of her subsidized housing since 1990. She pays $100 for an apartment with heat and hot water, which, unsubsidized, would cost $500 to $600. In return, she is obliged to adhere to the rules and regulations of the subsidized housing project including a responsibility to report employment and income changes. She has known that her income affects her portion of the rent. Since 1997, she has been employed part-time. She has not reported the employment or income to the plaintiff. By not reporting, the defendant avoided recalculation of and increase in her share of the rent.[8]
I find such conduct to be wilful, not in good faith and contrary to public policy. It is not too much to ask a tenant who receives the benefits of subsidized housing to report fully and CT Page 6576 faithfully changes which might affect the tenant's share of the monthly rent. And it is not too much to require the tenant to pay a fair share of the rent. Failure to report those changes and to pay one's fair share affects not only the plaintiff's management of the housing project, it affects the resources and benefits available for other needy, eligible families.
The decision in Parker to grant the request for equitable relief, under the particular facts and circumstances of that case, was informed by "plaintiff's status as a public housing authority and its special mandate and obligation, albeit notwithout limitation, to provide housing to low and moderate income families." (Emphasis added) East Hartford Housing Authority v.Parker, supra. It is that very same status and mandate of the plaintiff, under the particular facts and circumstances of this case, which informs this court's decision to deny the request for equitable relief.
Cognizant of the impact of this decision on the family, execution is stayed until June 30, 1999, to enable the three children to complete the academic year in their present respective school settings.
Judgment may enter for the plaintiff. Execution is stayed until June 30, 1999 upon the payment by the defendant to the plaintiff of $100 for use and occupancy on or before May 10, 1999, and $100 on or before June 10, 1999.
Tanzer, J.