BRYAN, Judge.
Gary Harrison and Patsy Harrison appeal from a summary judgment in favor of Family Home Builders, LLC (“FHB”). We affirm in part, reverse in part, and remand.

Factual Background and Procedural History

On January 5, 2007, the Harrisons and FHB entered into a written contract (“the contract”) in which FHB agreed to perform remodeling and construction work (“the work”) on the Harrisons’ existing house in Lauderdale County. FHB began the work; however, on May 4, 2007, the Harrisons terminated the contract before FHB had completed the work.
On July 16, 2007, the Harrisons sued FHB, stating claims of breach of contract, negligence, and fraud. As the basis of their breach-of-contract claim, the Harri-sons alleged (1) that FHB had agreed to perform the work in accordance with plans and specifications provided by the Harri-sons and had failed to do so; (2) that FHB had failed to complete the work; (3) that FHB had agreed to perform the work in accordance with applicable building codes and had failed to do so; (4) that the work performed by FHB had defects in materials and workmanship; (5) that FHB had failed to coordinate and supervise the work in an efficient manner; and (6) that FHB had overbilled the Harrisons for costs not related to the work.
As the basis of their negligence claim, the Harrisons alleged that FHB had breached the duty of care it owed the Harrisons by failing to perform the work in a workmanlike manner, by failing to perform the work in accordance with the plans and specifications provided by the Harrisons, by failing to complete the work in a timely manner, by failing to perform the work in accordance with the applicable *882 building codes, and by failing to coordinate and supervise the work in a proper manner.
As the basis of their fraud claim, the Harrisons alleged that, while it was performing the work, FHB had misrepresented to the Harrisons that certain costs were incurred in performing the work and that, in reliance on those misrepresentations, the Harrisons had paid FHB for materials and labor costs that had not been incurred in the performance of the work.
Answering, FHB denied the material allegations of the Harrisons’ complaint. The Harrisons later amended their complaint to add a claim that FHB had negligently hired, trained, supervised, and retained (“the negligent-supervision claim”) Kyle Gean, the individual who had supervised the work for FHB. Answering, FHB denied the material allegations of the Harri-sons’ amended complaint.
On March 29, 2010, FHB moved for a partial summary judgment with respect to the Harrisons’ fraud claim. The Harrisons filed no evidence in opposition to that motion, and the trial court entered an order granting it on May 20, 2010.
On August 17, 2010, FHB moved for a summary judgment with respect to the breach-of-contract claim, the negligence claim, and the negligent-supervision claim. FHB asserted that it was not liable for breach of contract or negligence based on the allegation that it had failed to perform the work in accordance with the plans and specifications because, FHB said, the Har-risons had substantially changed the plans and specifications after the contract was executed. FHB asserted that it was not liable for breach of contract or negligence based on the allegation that it had failed to complete the work because, FHB said, it was entitled to a reasonable amount of time to complete the work because the contract neither specified a date for completion of the work nor stated that time was of the essence and the Harrisons had unilaterally terminated the contract before FHB had had a reasonable amount of time to complete the work. FHB asserted that it was not liable for breach of contract or negligence based on the allegation that it had failed to perform the work in accordance with the applicable building codes because, FHB said, the Harrisons had not produced substantial evidence indicating that FHB had failed to perform its work in accordance with the applicable building codes and, even if FHB had failed to perform its work in accordance with the applicable building codes, the evidence indicated that the Harrisons had not given FHB a reasonable amount of time to correct such failures before unilaterally terminating the contract. FHB asserted that it was not liable for breach of contract or negligence based on the allegation that there were defects in material and workmanship because, FHB said, the Harrisons had failed to produce substantial evidence indicating that there were defects in materials and workmanship. FHB asserted that it was not liable for breach of contract or negligence based on the allegation that it had failed to coordinate and supervise the work in an efficient manner because, FHB said, the Harrisons had failed to produce substantial evidence indicating that FHB had failed to coordinate and supervise the work in an efficient manner. FHB asserted that it was not liable for breach of contract based on the allegation that it had overbilled the Harrisons because, FHB said, the Harrisons had admitted that they had no evidence indicating that FHB had overbilled them. Finally, FHB asserted that it was not liable for negligent supervision because, it said, the Harrisons had not produced substantial *883 evidence indicating that Gean was incompetent.
FHB supported its summary-judgment motion with, among other things, the deposition testimony of Gean and the contract. Gean testified as follows. He was not an employee of FHB; he acted as a subcontractor of FHB in preparing an estimate of the cost of the work before the contract was signed and in supervising the work after the contract was signed. Before the execution of the contract, he discussed the work with the Harrisons and submitted an estimate to them. His estimate was based on drawings provided by the Harrisons and quotes he had received from vendors and subcontractors. The drawings on which he based his estimate showed the addition of an outdoor kitchen, the removal of the windows from the back of the house, the removal of the windows from the garage, the removal of the doors from the garage, the addition of a concrete pad, and the remodeling of a bedroom and bathroom located in the western end of the house. Based on those drawings, Gean estimated that the work would cost $109,000 and would take approximately four months to complete. After the contract was signed, the Harrisons and their decorator, Madelyn Hereford, made substantial changes to the work. For example, in March and April 2007, the size of the outdoor kitchen was changed, the size of a pavilion was changed, a porch was added to the western side of the house, a porch was added to “the bay addition” to the house, sidewalks were added, the bay addition to the house was enlarged and changes were made to the recessed tub, the mantel, the fireplace, the tray ceiling, the coffee bar, the windows, and the french doors in that addition. Those changes increased the amount of the work to be performed, increased the cost of the work, and delayed the performance of the work because those changes required that some of the work that had been completed in accordance with the original drawings be redone. Gean estimated that approximately one-half of the work had been completed when the Harrisons unilaterally terminated the contract on May 4, 2007.
The contract signed by the parties on January 5, 2007, expressly provided that all representations made before the signing of the contract were merged into the contract. The contract neither specified a date for completion of the work nor stated that time was of the essence. Moreover, it did not specify a total price for the work. Instead, it provided that the Harrisons would pay all the costs of performing the work and, in addition, would pay FHB a contractor’s fee in the amount of 13% of those costs. In addition, the contract required FHB to perform the work in accordance with plans and specifications provided by the Harrisons and to comply with “the construction requirements of all local building codes.”
In opposition to FHB’s summary-judgment motion, the Harrisons asserted (1) that FHB’s failure to complete the work was caused by its incompetence rather than the changes made to the plans and specifications after the contract was signed; (2) that FHB’s contention that the Harrisons had failed to produce substantial evidence indicating that FHB had failed to comply with the applicable building codes had no merit; (3) that FHB’s contention that the Harrisons had failed to produce substantial evidence indicating that the work performed by FHB was defective had no merit; (4) that FHB’s contention that the Harrisons had failed to produce substantial evidence indicating that FHB had failed to coordinate and supervise the work in a proper manner had no merit; and (5) that it was a question of fact whether FHB had had a reasonable amount of time to complete the *884 work when the Harrisons terminated the contract.
As evidence in opposition to the summary-judgment motion, the Harrisons submitted, among other things, the affidavits of Gary Harrison and Derrick Coffman and the Harrisons’ answers to FHB’s interrogatories. In his affidavit, Gary Harrison testified as follows. Before the contract was signed, Gean estimated that the work would cost $109,500 and would take three to four months to complete; however, when the Harrisons terminated the contract on May 4, 2007, FHB had performed only approximately 50% of the work, yet costs of between $135,000 and $145,000 had already been incurred. Gary Harrison further testified:
“As stated in my attorney’s termination letter, the work performed by [FHB] was not performed in a competent and workmanlike manner in conformity with the applicable building codes.... In our answer to [FHB’s] interrogatory number 4, my wife and I listed a number of examples of defective work performed by [FHB] at our house....
“During the course of performance of the job by [FHB], we experienced a recurrent problem with [FHB’s] not properly manning the job. [FHB’s] employees were not consistently on the job on a daily basis and we experienced some weeks in which there were no employees of [FHB] on the job at all. On other occasions, we saw one or two of [FHB’s] employees at our house working when a full crew was expected and needed.
“Our job also was not properly supervised by Kyle Gean, [FHB’s] representative on the site. Kyle was not on our job on a regular basis and this was perhaps because we learned he was working on other jobs at the same time as he was being paid to work at our house. Mr. Gean failed to order materials needed for use in the work in a timely fashion[] as well as he ordered materials which were not suitable for use at our house and this required the proper materials to be reordered. Mr. Gean did not properly schedule the work or properly coordinate the work of the subcontractors and his employees working at our house. For example, the sheetrock man was scheduled to sheet-rock when the room to be sheet rocked was not prepared and as a result his work had to be rescheduled. The pavilion overhead construction was begun before the brick wall and header were addressed and this caused work to be stopped on the outside addition. Defective work performed by [FHB] also had to be torn out and redone and the repair work necessitated additional time to be performed. Finally, Mr. Gean did not follow the drawings, plans and directions of Madelyn Hereford, our interior decorator, and Robert Weber, our architect, and the work prescribed by them was never undertaken by [FHB] and this led to a disorganized work progress schedule.
“The failure of [FHB] to complete our project in a timely and reasonable manner is due to the incompetent, negligent and substandard work of [FHB] as outlined above. If [FHB] had properly manned the job, followed the directions of our architect and interior designer, properly supervised and coordinated the work of its employees and other subcontractors working at the project and performed its work in a workmanlike manner, our project would have been completed by mid April 2007. Prior to terminating [FHB], I asked [FHB] to commit that it could complete my project by May 18, 2007, but [FHB] refused to make that commitment. I *885 subsequently terminated [FHB’s] contract and hired Coffman Custom Homes to correct and repair [FHB’s] work and complete the work which [FHB] had failed to complete.”
FHB’s interrogatory number 4, which Gary Harrison referred to in his affidavit, asked the Harrisons to describe any instances of FHB’s work that they contended were negligent or defective. In answer to that interrogatory, the Harrisons stated:
“Concrete was poured without any vapor barrier, wire mesh or control (expansion) joints. Concrete blocks under weight bearing walls of pavilion 'and outdoor kitchen were laid 4" too high and had to be sawed off. Concrete had excessive cracking in all directions and the cracks were of good size. An error in calculating the amount of color needed for coloring the concrete was made causing the concrete on the west end of house to have to be poured on a different date. There were no utilities put under the concrete pad (except for a drain that was installed improperly) and the color was uneven and splotchy looking. The sealer appears to have been put on before the concrete had completely cured, causing bubbling. Concrete was never scored as agreed and there were low spots which allowed water to stand. In some areas of the slab the concrete was sloped toward the house which would allow water to get underneath the house. There were spots where the sealer was thicker than in other areas, making shiny spots. Kyle Gean had homeowner to hand dig the walkway on the river side of the pool and showed the elevation to be used. After the walkway was dug, limestone gravel began to ‘weep’ from under the retainer wall of the pool, causing an eventual settling and cracking of the pool retainer wall and deck. Spa tub framing (banger structure) was in contact with the ground but pressure treated material was not used and concrete footer was not adequate to hold weight of tub filled with water. Header across windows on west end of new construction (bathroom) was not to code. Concrete pad beside garage door entrance had high spots which would not allow pad to drain. Downspout at pad was not run under concrete. Load bearing wall in new walk-in closet was not built on a double floor joist and was therefore not properly supported. Shrubs and plants were stacked over to one side on each end of house for reuse, but irrigation system was severely damaged so as to prevent watering of shrubs which subsequently died. Irrigation system was hit numerous times during excavation without having the problem areas marked and the irrigation system controller was found laying out in the weather under a row of shrubs. Pavilion framing was not done according to code and had to be torn down and rebuilt. The ‘I-joists’ that were purchased for use on the Pavilion ceiling were cut on a diagonal contrary to the manufacturer’s specifications and has deemed them inoperable. Two sets of French doors that were ordered by Kyle Gean were delivered but were incorrect in that each French door had ten (10) lights instead of five (5) lights per door and had to be re-ordered. One of the French doors was supposed to be 4 feet wide but the order was for a five-foot door. The order for the new doors and windows was not placed in a timely manner and somewhat delayed the project. Brick facing to Pavilion footer was laid incorrectly and had to be torn away and re-laid. When the brick facing to the concrete pad was re-laid, it changed the spacing on the brick and several of the *886 mortar joints (rows) were excessively wide. The footer to the Pavilion and outdoor kitchen was not low enough causing the ground next to pool deck to be higher than the pool deck itself. Brick color did not match the brick on the original house and will have to be stained to make match. Tray ceilings in the master bath area were installed and had to be torn out and re-installed. Electrical plugs and light fixture mounting boxes are installed along with the wiring but wiring is not connected to a circuit breaker box. West bathroom wall built and then furred out to approximate a 2" x 6" wall (actually 1 ½" x 6") and the window that was ordered was 5 ⅛" which leaves a 1 ½" [sic] void that must be furred out. The floor of the new part of the bathroom was built approximately 5/16" higher than the floor in the original part. This discrepancy will cost more in time for the tile setter having to taper this discrepancy out over the width of the floor. Corners of fascia boards are butt joined rather than miter joints as are used around the rest of the house. Sheet rock man was scheduled to install sheet rock on two different occasions but the house was not ready for him to start. Homeowner and 3 men worked 1 ½ days to prepare room. Insulation was not scheduled and after showing up the sheetrock installer went home for 2 days before completing job. Trim work and sheet rock were torn up on the north wall of the closet and guest bath area but shouldn’t have been and had to be replaced. Fire access was not installed [in] attic area of new addition which is against code.”
Derrick Coffman’s affidavit stated:
“My name is Derrick Coffman, I am over the age of twenty-one and a resident citizen of Lauderdale County, Alabama. I have personal knowledge of the facts hereinafter stated in this Affidavit.
“I am self-employed as a residential home builder. I am and have been for several years licensed as a residential home builder by the Home Builders Li-censure Board of the State of Alabama. As such, I am familiar with the various building codes which are and have been in effect establishing standards for the construction and/or renovation of residences in this State.
I know the [Harrisons]. I was introduced to the [Harrisons] through work which my firm, Coffman Custom Homes, performed at the [Harrisons’] house ... pursuant to a cost plus contract. My cost plus contract with the Harrisons was made sometime after they had terminated their contract with [FHB], My scope of work included repairing any defective work performed by [FHB] as well as completing the work which [FHB] had failed to complete under its agreement with Mr. and Mrs. Harrison.
“I am familiar with the work performed by [FHB] at the Harrisons’ residence based on my inspection of the work prior to entering into my contract with the Harrisons as well as the problems my firm encountered later as a result of the defective workmanship of [FHB] at the residence. The work generally performed by [FHB] which I observed at the Harrison residence generally did not comply with the standards of the Southern Building Code or for that matter failed to conform with the standards of any other building code with which I am familiar and/or with standards of good workmanship. The negligent and defective workmanship of [FHB] at the [Harrisons’] house created additional problems and expenses for the Harrisons in repairing [FHB’s] incompetent work. For example, the concrete pad at the rear of the house had to be completely torn out and rebuilt be *887 cause of excessive cracking. There were numerous other examples of incompetent and negligent workmanship, like the pavilion work, but time and space do not allow me to list all of these problems in this affidavit.
“[FHB’s] work at the Harrisons’ residence was substandard, did not conform with the standards of the Southern Building Code or any other code and was not performed in compliance with standards of good building practice. Including the cost of tearing out a large portion of [FHB’s] work, the cost to the [Harrisons] for repairing the work of [FHB] was $151,411.55. In addition, the [Harrisons] paid my firm an additional sum for completing [FHB’s] work. I estimate [FHB] had completed only about fifty percent (50%) of its work under its contract with the Harrisons and, as stated, most of this work had to be removed and replaced or repaired.”
FHB moved to strike Gary Harrison’s and Coffman’s affidavits on the ground that they contained statements that were inadmissible because they were not based on personal knowledge or constituted hearsay. Thereafter, FHB deposed Coff-man and filed a supplemental brief in support of its summary-judgment motion with excerpts from Coffman’s deposition attached. FHB asserted that Coffman’s testimony supported FHB’s contention that the Harrisons had not given FHB a reasonable amount of time to complete the work and cited Coffman’s testimony that the work required by the contract between FHB and the Harrisons was “a one year project at minimum.” FHB also asserted that Coffman’s testimony supported FHB’s contention that the changes in the plans and specifications made by the Harrisons and their decorator had caused delays in FHB’s performance of the work and cited the following testimony by Coffman:
“[By FHB’s attorney] Q. If the plans were to change, would that cause it to take longer? ■ ,
“A. Yes.
“Q. Why is that?
“A. Well, if you’ve built to a certain plan and then you have to backtrack and tear something out and change it, of course, that can take longer. If you’ve got a set of plans and you’re building to them plans and plans and changes are made prior to you getting to the step and stages of the change, then other than a few minutes of sitting down and saying let’s do it this way instead of that way, that doesn’t make much of an increase in your time. Only if you’ve already went past that point and you have to go hack and tear ■ something out, a change that way could add to the time. “Q. How do changes such as that affect lining up your subcontractors?
“A. Well, if a certain subcontractor is scheduled to be there a certain day and a change causes you to not be ready for them that certain day, then they have to reschedule. A lot of times they’ve got another job scheduled past yours. So, sometimes they’ll go to your next job and you’ll get bumped to the end of their list and then you’ll have to get them when they’re available more than when you’re ready for them.”
However, Coffman testified that the concrete poured by FHB’s subcontractor was defective because it had cracks that extended below the surface and because some of its surface sloped away from the drains that had been installed in the concrete. Coffman further testified that, due to those defects, all the concrete poured by FHB’s subcontractor had to be torn out and replaced. Coffman also testified that the cracks in the concrete could have resulted from a failure to compact the soil before the concrete was poured, which *888 would be a violation of the International Residential Building Code; however, he did not know whether FHB’s subcontractor had failed to compact the soil.
In addition, Coffman testified that FHB’s subcontractor had not framed a bathroom correctly, which was a violation of the International Residential Building Code, and that he had to redo that framing. He testified that FHB’s subcontractor had failed to use treated wood around the recessed tub in the bathroom and that he had to replace it with treated wood. He testified that FHB’s subcontractor had failed to seal the windows in the bathroom correctly and that, as a result, water was coming in around the window frame. He testified that he had to remove the windows, redo the sealing, and then put the windows back in.
Coffman also testified that the framing for a room that was being added in another part of the house had to be taken down and redone because the supporting “I joists” were cut, which deprived them of structural integrity.
The Harrisons moved to strike FHB’s supplemental brief in support of its summary-judgment motion. On February 8, 2011, the trial court entered an order denying the Harrisons’ motion to strike FHB’s supplemental brief and granting FHB’s summary-judgment motion.[1] On March 4, 2011, the Harrisons appealed to the supreme court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.

Standard of Review

“We review a summary judgment de novo. American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786 (Ala.2002).
“ We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the non-movant to present substantial evidence creating a genuine issue of material fact. “Substantial evidence” is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.’
“Nationwide Prop. & Cas. Ins. Co. [v. DPF Architects, P.C.], 792 So.2d [369] at 372 [(Ala.2001)] (citations omitted), quoted in American Liberty Ins. Co., 825 So.2d at 790.”
Potter v. First Real Estate Co., 844 So.2d 540, 545 (Ala.2002).

Analysis

A. The fraud claim
The Harrisons have not raised an issue regarding the propriety of the trial court’s granting FHB’s partial-summary-judgment motion with respect to the Har-risons’ fraud claim and have not argued that the trial court erred in granting that motion. “ ‘An appeals court will consider only those issues properly delineated as such, and no matter will be considered on appeal unless presented and argued in brief. Ex parte Riley, 464 So.2d 92 (Ala.1985).’ ” Tucker v. Cullman-Jefferson *889 Cntys. Gas Dist., 864 So.2d 317, 319 (Ala.2003) (quoting Braxton v. Stewart, 539 So.2d 284, 286 (Ala.Civ.App.1988)) (emphasis omitted). Accordingly, we affirm the partial summary judgment with respect to the Harrisons’ fraud claim.
B. The breach-of-contract claim
The Harrisons argue that the trial court erred in granting the summary-judgment motion with respect to their breaeh-of-con-tract claim insofar as that claim is based on (1) the allegation that FHB failed to perform the work in accordance with the plans and specifications provided by the Harrisons, (2) the allegation that FHB failed to perform the work in a workmanlike manner, and (3) the allegation that FHB failed to complete the work.
“ ‘[N]ot every partial failure to comply with the terms of a contract by one party ... will entitle the other party to abandon the contract at once.’ ” Birmingham News Co. v. Fitzgerald, 222 Ala. 386, 388, 133 So. 31, 32 (1931) (quoting 6 R.C.L. p. 926). In the case now before us, in order for the Harrisons to establish that they had the right to unilaterally terminate the contract on May 4, 2007, they bore the burden of proving that FHB had committed a breach of the contract that was “ ‘of so material and substantial a nature as would constitute a defense to an action brought by [FHB] for [the Harrisons’] refusal to proceed with the contract.’ ” Id. (quoting 3 Williston on Contracts § 1467). “Whether or not a given breach is so material or essential may be frequently a question of fact to be determined by the jury, yet if in a particular case the question is so clear as to be decided only in one way, it is a question of law for the court.” Id.
In order for FHB’s breach of the contract to constitute a defense to an action brought by FHB based on the Harri-sons’ refusal to proceed with the contract, the breach must be sufficient to establish that FHB had not rendered substantial performance of the contract. See John D. Calamari & Joseph M. Perillo The Law of Contracts § 11.18(b) (4th ed. 1998) (“Substantial performance is the antithesis of material breach. If a breach is material, it follows that substantial performance has not been rendered.”). “Substantial performance of a contract does not contemplate exact performance of every detail but performance of all important parts.” Mac Pon Co. v. Vinsant Painting & Decorating Co., 423 So.2d 216, 218 (Ala.1982).
The Harrisons’ answer to FHB’s interrogatory number 4, the testimony regarding defects in the concrete contained in Coffman’s affidavit, and the testimony regarding defects in the concrete and the framing contained in Coffman’s deposition testimony constituted substantial evidence tending to prove that FHB had failed to perform some of its work in a workmanlike manner. See Potter v. First Real Estate Co., 844 So.2d at 545 (“ ‘ “Substantial evidence” is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” ’ ”). We conclude that the question whether that evidence indicates that FHB committed a material breach of the contract that entitled the Harrisons to terminate the contract unilaterally is a question of fact to be determined by a jury. See Birmingham News Co. v. Fitzgerald, 222 Ala. at 388, 133 So. at 32 (“Whether or not a given breach is so material or essential may be frequently a question of fact to be determined by the jury....”). Therefore, we reverse the summary judgment with respect to the breach-of-contract claim insofar as that claim is based on the allegation that FHB failed to perform the work in a workmanlike manner.
*890 Insofar as their breach-of-contract claim is based on the allegation that FHB failed to perform the work in accordance with the plans and specifications, the Harrisons argue that the trial court erred in granting the summary-judgment motion because, they say, (1) Madelyn Hereford, their decorator, testified that FHB installed plumbing pipes and electrical wiring in the wall to the left of a sliding pocket door instead of to the right as specified by the plans, which required that those pipes and wires be torn out and reinstalled, and (2) Gary Harrison testified in his affidavit that “Mr. Gean did not follow the drawings, plans and directions of Madelyn Hereford, our interior decorator, and Robert Weber, our architect.... ” That testimony of Gary Harrison is a mere eonelusory statement that, “ ‘cannot be considered in ruling upon a summary[-]judgment motion.’ ” B.M. v. Crosby, 581 So.2d 842, 843 (Ala.1991) (quoting trial court’s order). Hereford’s testimony tended to prove one instance of FHB’s failure to follow the plans and specifications. However, in order for that one instance of FHB’s failure to follow the plans and specifications to constitute a material breach of the contract, it would have to be sufficient to establish that FHB had failed to render substantial performance of the contract. See Birmingham News Co. v. Fitzgerald, 222 Ala. at 388, 133 So. at 32; and Calamari & Perillo The Law of Contracts § 11.18(b). We conclude that that one instance alone is not sufficient to establish that FHB failed to render substantial performance of the contract. See Mac Pon Co. v. Vinsant Painting & Decorating Co., 423 So.2d at 218 (“Substantial performance of a contract does not contemplate exact performance of every detail but performance of all important parts.”); and Birmingham News Co. v. Fitzgerald, 222 Ala. at 388, 133 So. at 32 (“Whether or not a given breach is so material or essential may be frequently a question of fact to be determined by the jury, yet if in a particular case the question is so clear as to be decided only in one way, it is a question of law for the court.”). Therefore, we affirm the summary judgment with respect to the breach-of-contract claim insofar as that claim is based on the allegation that FHB failed to follow the plans and specifications.
Insofar as their breach-of-contract claim is based on the allegation that FHB failed to complete the work, the Harrisons argue that the trial court erred in granting the summary-judgment motion because, they say, (1) Gean testified that, before the contract was signed, he had estimated that it would take three to four months to complete the work; (2) Gary Harrison testified that FHB could have completed the work by mid-April 2007 if it had performed the work properly; and (3) Hereford testified as follows:
“[By FHB’s attorney] Q. In your judgment, with all the changes that were made — and it goes up — in your notes, up until April the 1st, between April 1st and 6th. Due to those changes, this job couldn’t be completed by March or April of 2007; is that fair?
“A. Yes — no—wait a minute. Is it fair that it was not completed by March or April?
“Q. Due to the changes?
“A. I see no reason that it could not have been completed.
“Q. Okay. Even changes that were still made in March and April, huh?
“A. Well, look at the changes that were made. We changed from a jetted tub to spa. That — I believe that is — the space was already there. The framing could have been done.”
We cannot consider Gean’s estimate that it would take three to four *891 months to perform the contract because the contract expressly provided that all representations made before the signing of the contract were merged into the contract. In Ex parte Palm Harbor Homes, Inc., 798 So.2d 656, 660-61 (Ala.2001), the supreme court explained:
“As a general rule, ‘when parties reduce a contract to writing and intend that writing to be the complete contract, no extrinsic evidence of prior or contemporaneous agreements will be admissible to change, alter, or contradict the contractual writing.’ Sherman v. Woerner Magnolia Farms, Inc., 565 So.2d 601, 605 (Ala.1990). This is so, because, ‘all prior and contemporaneous negotiations are [deemed to be] merged’ into that writing. Crimson Indus., Inc. v. Kirkland, 736 So.2d 597, 601 (Ala.1999) (emphasis in original).
“ “When a contract contains ... a merger clause, the agreement is deemed to be “integrated,” such that evidence of prior or contemporaneous agreements shall not be admitted to contradict the terms of the agreement.’ Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1309 (11th Cir.1998). Merger clauses thus create a presumption that the writing represents an integrated, that is, the final and complete, agreement of the parties. See Tallmadge Bros., Inc. v. Iroquois Gas Transmission Sys., L.P., 252 Conn. 479, 504, 746 A.2d 1277, 1291 n. 15 (2000). ‘In order to rebut the presumption and, in effect, invalidate the merger clause, a party must offer evidence to establish the existence of fraud, bad faith, uncon-scionability, negligent omission or mistake in fact.’ Smith v. Central Soya of Athens, Inc., 604 F.Supp. 518, 526 (E.D.N.C.1985). See also Lake Martin/Alabama Power Licensee Ass’n, Inc. v. Alabama Power Co., 601 So.2d 942, 945 (Ala.1992) (“When fraud in the inducement has been ruled out, ... all prior statements and negotiations are merged into the written contract and ... in the absence of an ambiguity ..., parol evidence will not be received to explain, contradict, vary, add to, or subtract from the express terms of the written contract.’). Whether a contract is integrated is ordinarily a question of law for the court to decide. Moore v. Pennsylvania Castle Energy Corp., 89 F.3d 791, 797 (11th Cir.1996); Associated Catalog Merchandisers, Inc. v. Chagnon, 210 Conn. 734, 740, 557 A.2d 525, 528 (1989); Walker v. Saricks, 360 Pa. 594, 599, 63 A.2d 9, 11 (1949); see also Hibbett Sporting Goods v. Biernbaum, 375 So.2d 431, 435 (Ala.1979).”
In the ease now before us, the Harrisons have not argued that an exception to the merger doctrine applies to Gean’s estimate. Consequently, the merger clause in the contract precludes us from considering the estimate. See Ex parte Palm Harbor Homes, Inc.
Because the contract neither specified a date for completion of the work nor stated that time was of the essence, FHB was entitled to a reasonable time to perform the contract. See Lemon v. Golf Terrace Owners Ass’n, 611 So.2d 263, 265 (Ala.1992) (“[W]here a contractual obligation to perform exists, and no time is prescribed in the contract for performance, the law requires the obligated party to perform within a ‘reasonable time.’ ”). Although Coffman, who testified as an expert witness on behalf of the Harrisons, testified in his deposition that it would take a minimum of a year to perform the work, the Harrisons submitted sufficient evidence to establish a genuine issue of material fact regarding whether the Harrisons afforded FHB a reasonable time to perform the work before terminating the contract on May 4, 2007. Id. (“What is a *892 reasonable time depends on the nature of the act to be done and all of the circumstances relating to that act. This, necessarily, is a question to be determined by the trier of fact.”). Moreover, we conclude that, if a jury should find that the Harri-sons afforded FHB a reasonable time to complete the work, it would also be a jury question whether FHB’s failure to complete the work by May 4, 2007, constituted a material breach of the contract that would entitle the Harrisons to terminate the contract unilaterally. Birmingham, News Co. v. Fitzgerald, 222 Ala. at 388, 133 So. at 32. Therefore, we reverse the summary judgment with respect to the breach-of-contract claim insofar as that claim is based on the allegation that FHB failed to complete the work.
The Harrisons have not challenged the summary judgment with respect to the breach-of-contract claim insofar as that claim is based on any other allegations. “When an appellant fails to argue an issue in its brief, that issue is waived.” Boshell v. Keith, 418 So.2d 89, 92 (Ala.1982). Therefore, we affirm the summary judgment with respect to the breach-of-contract claim insofar as that claim is based on any allegation other than the allegations that FHB breached the contract by failing to perform the work in a workmanlike manner and by failing to complete the work.
C. The negligence claim
The Harrisons challenge the summary judgment with respect to the negligence claim insofar as that claim is based on the allegations that FHB failed to supervise the performance of the work in a proper manner, failed to perform the work in a workmanlike manner, and failed to perform the work in accordance with the plans and specifications. The same evidence that we held constituted substantial evidence indicating the FHB had not performed some of its work in a workmanlike manner for purposes of the breach-of-eon-tract claim also constitutes substantial evidence indicating that FHB failed to perform some of its work in a workmanlike manner for purposes of the negligence claim. Accordingly, based on that evidence, we reverse the summary judgment with respect to the negligence claim insofar as it is based on the allegation that FHB failed to perform some of its work in a workmanlike manner. See Potter v. First Real Estate Co., 844 So.2d at 545.
Moreover, Hereford’s testimony that FHB installed the pipes and wires to the left of the pocket door instead of to the right of it as required by the plans and specifications constitutes substantial evidence tending to prove that FHB failed to perform the work in accordance with the plans and specifications. Id. For purposes of the breach-of-contract claim, it was necessary that the Harrisons establish that FHB’s failure to perform the work in accordance with the plans and specifications constituted a material breach of the contract, and we are affirming the summary judgment with respect to the breach of contract claim insofar as it is based on the allegation that FHB failed to perform the work in accordance with the plans and specifications because we have concluded that the single instance of FHB’s failure to perform the work in accordance with the plans and specifications attested to by Hereford did not establish that it constituted a material breach of the contract. However, for purposes of the negligence claim, the Harrisons are not required to prove that FHB’s failure to perform the work in accordance with the plans and specifications constituted a material breach of the contract. Accordingly, based on Hereford’s testimony that FHB installed the pipes and wires to the left of the *893 pocket door instead of to the right of it as required by the plans and specifications, we reverse the summary judgment with respect to the negligence claim insofar as it is based on the allegation that FHB failed to perform the work in accordance with the plans and specifications.
With respect to the allegation that FHB failed to supervise the performance of the work in a proper manner, Gary Harrison testified in his affidavit that Gean failed to come to the job site on a regular basis, failed to order materials in a timely manner, and failed to schedule and coordinate the work of subcontractors in a proper manner. In addition, Gary Harrison described two examples of Gean’s failure to coordinate the work of subcontractors in a proper manner. Gary Harrison also testified that Gean had ordered materials that were not suitable for the work, which had to be replaced. That testimony constituted substantial evidence indicating that FHB had not supervised the performance of the work in a proper manner. See Potter v. First Real Estate Co., 844 So.2d at 545. Accordingly, we reverse the summary judgment with respect to the negligence claim insofar as it is based on the allegation that FHB failed to supervise the performance of the work in a proper manner.
The Harrisons have not challenged the summary judgment with respect to the negligence claim insofar as that claim is based on any other allegations. “When an appellant fails to argue an issue in its brief, that issue is waived.” Boshell v. Keith, 418 So.2d at 92. Accordingly, we affirm the summary judgment with respect to the negligence claim insofar as that claim is based on any allegations other than the allegations that FHB failed to perform the work in a workmanlike manner, failed to perform the work in accordance with the plans and specifications, and failed to supervise the performance of the work in a proper manner.
D. The negligent-supervision claim
The Harrisons first argue that the trial court erred in granting the summary-judgment motion with respect to the negligent-supervision claim because, they say, FHB’s narrative statement of undisputed fact “fails to include a factual statement pertaining to the issue of [FHB’s] negligent employment, supervision, and/or retention of the services of Kyle Gean.” Harrison’s brief, at p. 39. However, FHB asserted that it was entitled to a summary judgment with respect to the negligent-supervision claim on the ground that the Harrisons had not produced substantial evidence indicating that Gean was incompetent. “When the basis of a summary-judgment motion is a failure of the non-movant’s evidence, the movant’s burden ... is limited to informing the court of the basis of its motion — that is, the moving party must indicate where the nonmoving party’s case suffers an evidentiary failure.” Rector v. Better Houses, Inc., 820 So.2d 75, 80 (Ala.2001). The Harrisons have cited no legal authority standing for the proposition that, when the basis of a summary-judgment motion is a failure of the non-movant’s evidence, the movant must include in his or her narrative statement of undisputed facts a factual statement regarding the failure of that evidence.
“Rule 28(a)(10), Ala. RApp. P., requires that arguments in an appellant’s brief contain ‘citations to the cases, statutes, other authorities, and parts of the record relied on.’ ... [I]t is well settled that a failure to comply with the requirements of Rule 28(a)(10) requiring citation of authority in support of the arguments presented provides this Court with a basis for disregarding those arguments. Ex parte Showers, 812 So.2d 277, 281 (Ala.2001).”
*894 State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 822 (Ala.2005). Because the Harrisons have not cited any legal authority supporting their first argument regarding the negligent-supervision claim, we decline to consider that argument. Id.
The Harrisons also argue that the trial court erred in granting the summary-judgment motion with respect to their negligent-supervision claim because, they say, the trial court had before it evidence indicating that Gean had never supervised a job as large as the work to be performed on the Harrisons’ house, that the principals of FHB seldom came to the job site to check on the performance of the work and voiced no concerns about the quality of the work to Gean despite the Harrisons’ complaining to them, that Gean failed to supervise the performance of the work in a proper manner, and that the work was not performed in a workmanlike manner. However, the Harrisons have not supported this argument with any legal authority. Therefore, we decline to consider it. Id. Accordingly, we affirm the summary judgment with respect to the negligent-supervision claim.

Conclusion

In summary, we reverse the summary judgment with respect to the breach-of-contract claim insofar as it is based on the allegations that FHB failed to perform the work in a workmanlike manner and that FHB failed to complete the contract within a reasonable time; we reverse the summary judgment with respect to the negligence claim insofar as it is based on the allegations that FHB failed to perform the work in a workmanlike manner, failed to perform the work in accordance with the plans and specifications, and failed to supervise the performance of the work in a proper manner; we affirm the judgment of the trial court in all other respects; and we remand the cause for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.

. The record on appeal does not indicate whether the trial court ruled on FHB's motion to strike Gary Harrison’s and Coffman’s affidavits.