NOT DESIGNATED FOR PUBLICATION

No. 120,847

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LYNN KAUFMAN and KAREN F. KAUFMAN,
*Appellees*,

v.

STEPHEN W. OLDENETTEL,
*Appellee*,
BARRY MCNEW,
*Appellant*,

and

JOHN DOE and MARY DOE, et al.,
*Defendants*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed September 18, 2020. Affirmed.

*Shannon S. Crane*, of Hutchinson, for appellant.

*John B. Swearer* and *Adam M. Teel*, of Martindell Swearer Shaffer Ridenour LLP, of Hutchinson, for appellees.

Before BUSER, P.J., ATCHESON, J., and WALKER, S.J.

ATCHESON, J.: Lynn and Karen Kaufman sold about 45 acres of land near Pretty Prairie, Kansas, on contract in 2011 to Barry McNew through his agent Stephen Oldenettel. The transaction unraveled about six years later when the Kaufmans sued both

McNew and Oldenettel in the Reno County District Court for breach of the contract. McNew counterclaimed against the Kaufmans, contending they had first breached the contract and cross-claimed against Oldenettel. The district court granted summary judgment to the Kaufmans and after a series of proceedings on remedy entered an order giving them possession of the land. McNew has appealed. We find no basis in his appellate arguments for reversing the district court and, therefore, affirm the summary judgment and related relief.

## A SHORT FACTUAL AND PROCEDURAL HISTORY

Before turning to the points McNew has raised on appeal, we provide an overview of the transaction and the litigation for context. We recognize our account is abbreviated and rely on the parties' familiarity with the circumstances for details only peripherally related to the remaining legal issues.

Oldenettel negotiated the sale of the land with the Kaufmans for a purchase price of $166,000, including a $10,000 down payment. The Kaufmans agreed to carry the balance of the purchase price with interest at an annual rate of 7 percent. McNew provided the down payment, and the Kaufmans expected either Oldenettel or McNew to make set monthly payments. About 18 months later, Oldenettel and the Kaufmans renegotiated the annual interest rate to 20 percent and excluded mineral rights from the sale.

McNew made regular payments under the amended contract through July 2017, although some of them were late or for less than the full amount due. As we understand matters, those periodic deficiencies were rectified to the Kaufmans' satisfaction. But McNew stopped making payments in mid-2017, and the Kaufmans discovered he had not been paying the property taxes. Those deficiencies were not rectified. The Kaufmans paid back property taxes in August to avert a foreclosure and covered a delinquency on a

property insurance policy. In the meantime, Oldenettel assigned to McNew any interest he might have in the land contract or the property

The Kaufmans filed their action against McNew and Oldenettel in November 2017 for breach of the land contract and sought recovery of the land as a remedy. As we indicated, McNew counterclaimed against the Kaufmans for their alleged breach of the agreement; he contended those breaches should offset or mitigate any purported breaches on his part. Throughout the litigation, McNew asserted the Kaufmans breached the contract by retaining payments made under the Conservation Reserve Program, a federal project providing subsidies to farmers to encourage removal of some environmentally sensitive land from cultivation and planting of environmentally friendly crops on other land. About 8 of the 45 acres were included in the program, generating annual payments of less than $1,000. McNew alleged various causes of action against Oldenettel on the grounds he had not been authorized to negotiate or enter into the amended land contract.

The district court granted summary judgment to the Kaufmans on their claim that McNew had breached the contract when he failed to pay the property taxes and stopped making monthly payments in mid-2017. The district then held several hearings, including one with testimonial evidence, to determine the amount due on the contract to fix a redemption period for McNew. McNew presented evidence about improvements he made to the property and the payments under the federal conservation program. Ultimately, the district court entered an order granting the Kaufmans clear title to the land and allowing McNew a four-month redemption period. Along the way, McNew filed various motions for reconsideration and finally asked the district court to set a supersedeas bond. The district court ordered a bond of $75,000; McNew never posted the bond. He did, however, file a notice of appeal, and this court granted him leave to docket the appeal late. Oldenettel is not a party to this appeal.

3

THE LEGAL ANALYSIS

On appeal, McNew challenges the district court's decision to grant summary judgment to the Kaufmans on multiple grounds. We, therefore, begin with the well-known standards governing summary judgment in the district court and on appellate review. Parties seeking summary judgment (here, the Kaufmans) have the obligation to show, based on appropriate evidentiary materials, there are no disputed issues of material fact and judgment may, therefore, be entered in their favor as a matter of law. *Trear v. Chamberlain*, 308 Kan. 932, 935, 425 P.3d 297 (2018); *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009). In essence, the movants argue there is nothing for a jury or a trial judge sitting as fact-finder to decide that would make any difference. The party opposing summary judgment (here, McNew) must then point to evidence calling into question a material factual representation made in support of the motion. *Trear*, 308 Kan. at 935-36; *Shamberg*, 289 Kan. at 900. If the opposing party does so, the motion should be denied so a fact-finder may resolve that dispute.

In ruling on a summary judgment request, the district court must view the evidence most favorably to the party opposing the motion and give that party the benefit of every reasonable inference that might be drawn from the evidentiary record. *Trear*, 308 Kan. at 935-36; *Shamberg*, 289 Kan. at 900. An appellate court applies the same standards in reviewing the entry of a summary judgment. *Trear*, 308 Kan. at 936. Because entry of summary judgment amounts to a question of law—it entails the application of legal principles to uncontroverted facts—an appellate court owes no deference to the district court's decision to grant the motion and review is unlimited. See *Adams v. Board of Sedgwick County Comm'rs*, 289 Kan. 577, 584, 214 P.3d 1173 (2009); *Golden v. Den-Mat Corporation*, 47 Kan. App. 2d 450, 460, 276 P.3d 773 (2012).

McNew first argues that the land contract contains no acceleration clause that would make all future payments due upon a default. Although that is true, the contract

provides that the Kaufmans may recover the real property as a remedy for breach. The Kaufmans neither sought nor obtained a judgment for the unpaid balance on the contract. They received an order returning the land to them—a remedy the contract specifically allowed. The district court, therefore, did not err in granting summary judgment in this respect.

McNew next submits he substantially performed under the contract and the district court failed to appropriately determine the amount due on the contract as it pertained to establishing the redemption period. In responding to the Kaufmans' motion for summary judgment, McNew controverted none of the factual representations they made in support of their motion. Those representations, therefore, were admitted and could be considered by the district court as undisputed facts for summary judgment purposes. By the time the Kaufmans filed suit, McNew had not paid on the contract for three months and had allowed delinquent property taxes to accumulate for considerably longer. Those were material breaches of the contract, meaning McNew had not substantially performed.

Substantial performance constitutes satisfaction of the contract by fulfilling its essential purpose. *Dexter v. Brake*, 46 Kan. App. 2d 1020, 1033, 269 P.3d 846 (2012); *Almena State Bank v. Enfield*, 24 Kan. App. 2d 834, 838-40, 954 P.2d 724 (1998). Conversely, a material breach renders something "substantially less [than] or different [from]" what the parties bargained for. *Dexter*, 46 Kan. App. 2d at 1034. Substantial performance, then, stands "in direct contrast to . . . material breach." 46 Kan. App. 2d at 1034. Substantial performance overlooks minor deviations or irregularities in the promised exchange if what the parties actually provide materially matches the contractual obligations. *Almena State Bank*, 24 Kan. App. 2d at 839; see *Harrison v. Family Home Builders, LLC*, 84 So. 3d 879, 889 (Ala. Civ. App. 2011); *Pack 2000, Inc. v. Cushman*, 126 Conn. App. 339, 349, 11 A.3d 181 (2011). Not paying on a contract when payment is the principal required performance constitutes a material breach. Here, that would include

5

the monthly payments and the property taxes, especially when the failure was a continuing one. The district court did not err in so ruling.

The district court found that McNew had paid very little of the principal due on the contract and the bulk of each month's payment covered the interest. The remaining debt was a factor in determining the redemption period, along with the fair market value of the property. See K.S.A. 2019 Supp. 60-2414(m). McNew argues that the district court failed to give fair consideration to the payments under the Conservation Reserve Program in its determination of the redemption period. McNew estimated the payments that should have gone to him totaled about $6,000. The district court determined that more than $160,000 remained due on the contract. In short, even crediting what McNew claimed he was owed for the government payments, the adjusted balance wouldn't have materially affected the statutory redemption period. McNew has not demonstrated a reversible error (and probably no error at all) in this respect.

For his third point on appeal, McNew contends Oldenettel did not have the authority to enter into the amended contract on his behalf. McNew, however, conceded that Oldenettel was authorized to negotiate and sign the original contract with the Kaufmans for him. Based on the summary judgment record, then, the Kaufmans knew or had reason to know that Oldenettel acted as McNew's agent with respect to the original contract. And even crediting McNew's assertion that he had withdrawn Oldenettel's authority, the Kaufmans had no reason to know of that change in status. They, therefore, reasonably relied on Oldenettel's apparent authority to handle the amended contract. In that situation, McNew would be legally bound by the actions of Oldenettel as his apparent agent in dealing with third parties, including the Kaufmans. See *Town Center Shopping Center v. Premier Mortgage Funding, Inc.*, 37 Kan. App. 2d 1, 6, 148 P.3d 565 (2006) (discussing apparent agency and authority); *Digital Alley, Inc. v. Z3 Technology, LLC*, 864 F. Supp. 2d 1050, 1072-73 (D. Kan. 2012) ("[T]ermination of actual authority does not, by itself, terminate the apparent authority held by an agent," so a third party

may rely on that apparent authority until "it is no longer reasonable" to do so.); Restatement Third of Agency § 3.11 ("Apparent authority ends when it is no longer reasonable for the third party with whom an agent deals to believe that the agent continues to act with actual authority.").

The district court did not err in finding that Oldenettel acted with authority (either actual or apparent) to bind McNew to the revised contract with the Kaufmans. But that determination would not necessarily affect Oldenettel's liability to McNew if he acted without authority. We have not been called upon to and, therefore, do not offer any opinions about the legal rights and duties between McNew and Oldenettel arising from their relationship as principal and agent.

Finally, McNew argues the district court acted prematurely and improvidently in granting summary judgment while he still had discovery requests outstanding to the Kaufmans and Oldenettel. As a general proposition, a district court should not consider summary judgment until discovery has been completed. *National Restoration Co. v. Merit General Contractors, Inc.*, 41 Kan. App. 2d 1010, 1031, 208 P.3d 755 (2009). But the proposition is hardly ironclad and, in practice, often operates more as a sound guideline than an impervious rule. A district court has considerable latitude in determining when to rule on a summary judgment motion.

Here, McNew has not detailed the outstanding discovery or explained how the responses might have affected what he presented in opposition to the Kaufmans' motion. Likewise, he has not shown that he availed himself of K.S.A. 2019 Supp. 60-256(f) to request a continuance from the district court to secure additional affidavits or to undertake discovery necessary to respond to the motion. Under the circumstances, McNew has not shown the district court erred in ruling on the Kaufmans' motion for summary judgment when it did. See *Hauptman v. WMC, Inc.*, 43 Kan. App. 2d 276, 298, 224 P.3d 1175 (2010); *Garn v. Higgins*, No. 118,980, 2019 WL 638277, at *6 (Kan. App.

7

2019) (unpublished opinion); *Skyscapes of Castle Pines, LLC v. Fischer*, No. 110,444, 2014 WL 5801042, at \*6 (Kan. App. 2014) (unpublished opinion).

Affirmed.